UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SPOFFORD,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security,<br><br>Defendant. | CIVIL ACTION<br>No. 4:18-cv-11867-TSH |

## REPORT AND RECOMMENDATION

**September 30, 2020**

Hennessy, M.J.,

Pursuant to 42 U.S.C. § 405(g), Plaintiff John Spofford moves to reverse the Commissioner's decision to deny his application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"). [Dkt. No. 15]. The Commissioner, in turn, moves for an order affirming his decision. [Dkt. No. 16]. The motions are ripe for adjudication.

---

[1] Plaintiff commenced the instant action against Nancy Berryhill, who at that time was the Acting Commissioner of the Social Security Administration. Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019. See Jim Borland, Social Security Welcomes its New Commissioner, SOCIAL SECURITY ADMINISTRATION BLOG (June 17, 2019), https://blog.ssa.gov/social-security-welcomes-its-new-commissioner/. Andrew Saul has been automatically substituted as the party defendant in this action. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution."); see also 42 U.S.C. § 405(g) (noting that an action survives notwithstanding any change of the official occupying the office of Commissioner of the Social Security Administration).

1

For the reasons stated below, the undersigned recommends that the Commissioner's motion be GRANTED, and Plaintiff's motion be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff was born on November 20, 1990 and was twenty-five years old at the time he applied for social security benefits on April 12, 2016, alleging an onset date of October 1, 2015. [AR 197-213]. Plaintiff did not finish high school and claims to have stopped attending school in 9th grade, although his individualized education plan listed him in 11th grade. [AR 43, 303-313]. Plaintiff last worked as an overnight stocker at a department store in Alabama from November 2014 to July 2015. [AR 302]. Plaintiff originally filed for social security benefits on the basis of fibromyalgia, angina, chronic headaches, and left side pain, but later amended his application to include disabilities related to mental impairments. [AR 225].

Following his application, the Commissioner denied his claims on June 9, 2016, and again on reconsideration on September 29, 2016. [AR 113-116, 119-124]. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 15, 2017. [AR 36-62]. Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing, at which both the VE and Plaintiff testified. [AR 36-62].

On January 11, 2018, the ALJ issued a decision denying Plaintiff's entitlement to benefits under Title II or Title XVI. [AR 12-30]. On June 29, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's January 11, 2018 decision the final decision of the Commissioner. [AR 1-6]. On August 30, 2018, Plaintiff filed a complaint in this court seeking review of the Commissioner's decision pursuant to 42 U.S.C. 405(g). [Dkt. No. 1]. On February 26, 2019, Plaintiff filed a motion for an order reversing the

Commissioner's decision. [Dkt. No. 15]. On April 9, 2019, the Commissioner moved to affirm. [Dkt. No. 16]. On April 22, 2020, Judge Hillman referred the case to me for a report and recommendation on the parties' cross-motions. [Dkt. No. 22].

## II.   LEGAL STANDARDS

### A.   Standard of Review

The Act provides in pertinent part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . .. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..

42 U.S.C. § 405(g); see also 42 U.S.C. § 1383(c)(3).

Thus, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). "Substantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Indeed, the court "must uphold the Secretary's findings 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Under such review, "[t]he ALJ's

3

findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam)). In conducting review, the court must be mindful that the ALJ, and not the court, determines issues of credibility, resolves conflicts in the evidence, and draws conclusions from such evidence. Blais-Peck v. Colvin, 2014-cv-30084 (KAR), 2015 WL 4692456 at *4 (D. Mass. August 6, 2015).

### B.     Social Security Disability Standard

The Commissioner evaluates if an individual is disabled under the Act using a sequential five-step process:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations, then the application is granted; 4) if the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

"The applicant has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Once the applicant establishes the inability to perform any past relevant work, "the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)). Before proceeding to steps 4

and 5, the Commissioner must assess the applicant's residual functional capacity ("RFC"), which facilitates the Commissioner's determinations at step 4 whether the applicant can do past relevant work, and at step 5 whether the applicant can adjust to other work. See 20 C.F.R. § 416.920(e).

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

### III.  THE ALJ'S DECISION

On January 11, 2018, the ALJ issued his decision, denying Plaintiff's entitlement to benefits. [AR 12-30]. In determining whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations. See 20 C.F.R. § 416.920(a). At Step One, the ALJ found that Plaintiff met insured status through March 31, 2017 and had not engaged in substantial gainful activity since October 1, 2015, the date of alleged disability onset. [AR 17]. At the second step, the ALJ found that Plaintiff suffers from two severe impairments: fibromyalgia and migraine headaches. [AR 17]. The ALJ considered Plaintiff's mental impairments of anxiety and depression and found that they were non-severe. [AR 18]. In making this finding, the ALJ considered the four broad areas of mental functions as required by the regulations; he determined that the Plaintiff had no limitation in the first and fourth areas of mental functioning, and mild limitations in the second and third. See 20 C.F.R. § 404.1520a(c)(3). At Step Three, the ALJ concluded that Plaintiff did not have an impairment, or combination of impairments that equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 39-40].

Before continuing to Step Four of the analysis, the ALJ assessed Plaintiff's RFC. [AR 22]. The ALJ determined that Plaintiff had the RFC "to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can occasionally balance, stoop, kneel, crouch, crawl, or climb (ramps, stairs, ladders, ropes or scaffolds)." [AR 22]. In making this assessment, the ALJ reviewed Plaintiff's history of mental and physical impairments including the opinions of treating and non-treating sources. [AR 22-28]. The ALJ assigned substantial weight to the third-party report of Plaintiff's wife. [AR 22-23]. The ALJ assigned great weight to non-examining sources Dr. John Jao and Dr. Alice Truong, consulting examiner Dr. Shawn Channell, and treating physicians Matthew Enos, PA-C and Jennifer Ryan, D.O.'s August 10, 2016 report. [AR 25, 28]. The ALJ assigned partial weight to P.A. Enos and D.O. Ryan's August 30, 2017 questionnaire. [AR 27]. The ALJ assigned little weight to non-examining sources Dr. Rubin Yurkevicz and David Kent, Psy.D., and treating physicians P.A. Enos and D.O. Ryan's March 1, 2017 statement and questionnaire. [AR 26-27]. After discussing the weight given to these opinions, the ALJ concluded that there existed a "substantial disparity" between the Plaintiff's complaints and the objective medical findings contained within the record. [AR 28].

At Step Four, the ALJ found that Plaintiff did not have past relevant work. [AR 28]. The ALJ then proceeded to Step Five. [AR 28]. Taking into account Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ determined Plaintiff could have performed three jobs that existed in significant numbers in the national and regional economies: packaging (Dictionary of Occupational Titles 920.687-018), inspector (Dictionary of Occupational Titles 716.687-014), and assembler (Dictionary of

Occupational Titles 726.687-034). [AR 29]. Consequently, the ALJ concluded that Plaintiff was not disabled from October 1, 2015 through January 11, 2018. [AR 30].

## IV.   ANALYSIS

Plaintiff challenges the Commissioner's final decision on four primary grounds. Plaintiff argues that at Step Two, the ALJ erred by finding Plaintiff's mental impairments non-severe. Plaintiff also challenges the ALJ's RFC determination for (1) failing to provide good reasons for rejecting treating source opinions, (2) relying on expert opinion that lacked access to Plaintiff's full medical records, and (3) describing Plaintiff's RFC in a manner that prevents meaningful review.

### A.   The ALJ's Step Two Finding

Plaintiff challenges the ALJ's Step Two finding that Plaintiff's determinable medical impairments of affective disorder and anxiety disorder were not severe. [AR 18]. The Step Two severity inquiry is "a *de minimis* policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986); see also SSR 85-28 (quoting Baeder v. Heckler, 768 F.2d 547, 553 (3rd Cir. 1985)). Accordingly, any error in the severity determination is harmless if the ALJ finds some severe impairment that allows the five-step process to continue, and the non-severe impairments are properly considered in the RFC assessment. See Syms v. Astrue, 10-cv-499 (JD), 2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011) ("[A]n error at Step Two will result in reversible error only if the ALJ concluded the decision at Step Two, finding no severe impairment.") (collecting cases); see also Blais-Peck v. Colvin, 14-cv-30084 (KAR), 2015 WL 4692456, at *6 ("[E]ven if the ALJ erred in finding Plaintiff's mental impairments to be non-severe, any such error is harmless because the ALJ

sufficiently took the non-severe impairments into consideration when assessing Plaintiff's RFC.") (citing Grady v. Astrue, 894 F. Supp. 2d 131, 142 (D. Mass. 2012)).

At Step Two, after considering the four broad areas of mental functioning, the ALJ found that Plaintiff's mental impairments were non-severe. [AR 18-20]. Separately, the ALJ determined that Plaintiff had severe physical impairments allowing the sequential five-step evaluation to continue. [AR 17]. Therefore, the ALJ can only be found to have committed reversible error if he failed to properly consider Plaintiff's non-severe mental impairments in Plaintiff's RFC. See Grady, 894 F. Supp. 2d at 142. Furthermore, to meet his burden on § 405(g) review, Plaintiff must do more than demonstrate the existence of an impairment; he must show how that impairment, considered with other impairments, limited his functional capacity to a degree inconsistent with the ALJ's RFC determination. See Caterino v. Berryhill, 366 F. Supp. 3d 187, 194-95 (D. Mass. 2019). Plaintiff failed to show such an error.

Throughout the ALJ's RFC analysis, the ALJ weighed medical source opinions that addressed the impact of Plaintiff's mental conditions on his ability to perform work. The ALJ also concluded his RFC determination by expressly referring to Plaintiff's severe limitations as well as his non-severe mental limitations. [AR 28]. In evaluating the impact of Plaintiff's mental RFC, the ALJ gave great weight to state agency examining source Dr. Channell. [AR 25]. In Dr. Channell's September 27, 2016 opinion, he reported that Plaintiff's symptoms included "depressed mood, anxiety, diminished interest in activities, sleep problems, loss of energy, and poor concentration" consistent with diagnoses of Major Depressive Disorder and Unspecified Anxiety Disorder. [AR 25]. However, Dr. Channell opined that though Plaintiff "exhibited a restricted range of affect" and was "stressed out

and tired," his though process was "coherent, logical, goal oriented, and organized."  [AR 25].  Additionally, Dr. Channell's report that Plaintiff was able to manage his activities of daily living is consistent with the credited opinion of Plaintiff's wife.  [AR 23].  The ALJ also gave great weight to the August 10, 2016 opinion of P.A. Enos and D.O. Ryan who did not notice any memory concentration or attention deficits.  [AR 24].

Accordingly, there was no Step Two error as the ALJ's RFC determination was developed with due consideration of the impact of Plaintiff's mental conditions on Plaintiff's ability to work.  See Perez v. Astrue, C.A. No. 11-30074 (KPN), 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011) ("Any [Step Two] error . . . was harmless, however, as the ALJ explicitly considered 'all symptoms,' both severe and non-severe, in assessing Plaintiff's [RFC] and there is no indication that the ALJ failed to consider the cumulative effect of these impairments.").

### B.   The ALJ's RFC determination

The undersigned reviews each of Plaintiff's challenges to the ALJ's RFC determination in turn.

#### 1.   The ALJ's Weighing of P.A. Enos and Dr. Ryan's March 1, 2017 Opinion

In his decision, the ALJ gave little weight to the March 1, 2017 opinion from treating sources P.A. Enos and D.O. Ryan because it was "inconsistent with other evidence of record, including but not limited to the claimant's activities of daily living and the report of the claimant's wife."  [AR 27].  Plaintiff argues that this was improper because the ALJ failed to provide sufficient justification for rejecting this opinion.

Per SSA regulations, an ALJ must "always consider the medical opinions in [the] case record."  20 C.F.R. § 416.927(b).  In the First Circuit, a treating physician's opinion

9

is generally entitled to controlling weight, but the ALJ may discount that weight where it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians. See Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004). Where controlling weight is not given to a treating source opinion, the ALJ assesses the opinion after considering several factors, including the length of treatment relationship and frequency of examination, the nature and extent of the treatment relationship, and the consistency of the opinion with the record as a whole. See 20 C.F.R. § 416.927(c). However, an ALJ is not required to expressly mention each of these factors in the assessment. See Morales v. Comm'r of Soc. Sec., 2 F. App'x 34, 36 (1st Cir. 2001) (per curiam).

Several aspects of the record provide substantial evidence for the conclusion that Plaintiff was not as limited as P.A. Enos and D.O. Ryan opined on March 1, 2017. First, as the ALJ expressly noted, the opinion cannot be squared with information provided by Plaintiff's wife. Whereas P.A. Enos and D.O. Ryan opined that Plaintiff was "seriously limited, but not precluded from functioning" in in all sixteen areas necessary to do unskilled work, including the ability to "understand and remember [and carry out] very short and simple instructions," "maintain attention for two hour segments," "respond appropriately to changes in a routine work setting," and "deal with normal work stress," [AR 910-11], Plaintiff's wife reported in July 2016 that Plaintiff can pay attention for a long time, is able to finish what he starts, can follow written and oral instructions very well, but struggles with spoken instructions sometimes, and can handle stress and changes in routine well. [AR 271-72]. Similarly, as to Plaintiff's physical limitations, the ALJ provided sufficient justification for discrediting P.A. Enos and D.O. Ryan's opinion that Plaintiff would be

10

limited to lifting less than ten pounds when Plaintiff's wife stated that he was able to perform tasks such as shopping, vacuuming, changing pet litter, and lifting up to ten pounds. [AR 267-69]. Plaintiff's wife's statement is consistent with the reports of other experts. [AR 28]. See 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

In addition, the March 1, 2017 opinion is inconsistent with other reports from P.A. Enos and D.O. Ryan. For example, on August 10, 2016, they opined that Plaintiff was attentive to personal appearance, and could get along adequately with other people, travel independently in public, and handle monthly benefits. [AR 451]. Whereas P.A. Enos and D.O. Ryan opined on March 1, 2017 that Plaintiff's ability to interact appropriately with the general public and maintain socially appropriate behavior was "limited but satisfactory," on September 15, 2016, they opined that Plaintiff's speech, mood, and affect were appropriate. [AR 481-83]. On August 30, 2017, they opined that Plaintiff's mental status was appropriate in every category – including speech, mood, cognition, and thought processes. [AR 1074]. There is tension between these opinions and the March 1, 2017 opinion characterizing Plaintiff's abilities to perform work as seriously limited and less than satisfactory for each ability and aptitude, [AR 910-11], supporting the ALJ's determination.

Lastly, the March 1, 2017 opinion is in tension with contemporary medical records from other sources. See e.g. September 28, 2016 Assessment of Dr. Clark, Psychologist ("manages a full range of [activities of daily living] where he lives with his parents and his wife and he is able to cook, clean, shop, drive, manage finances, watch tv and pay attention. [H]e has difficulty socializing due to anxiety, fatigue[,] and anhedonia and that is causing

difficulties with his wife. The evidence does not suggest a severe psych impairment."), [AR 92]; September 27, 2016 Consultative Examination Report of Dr. Shawn Channell, Licensed Psychologist ("generally able to sustain attention, complete tasks and keep a regular routine;" "able to understand and remember instructions;" "able to interact appropriately and effectively with others;" capable "of managing his own funds;" "mental health symptoms would not significantly compromise his ability to handle ordinary work pressures or to maintain production levels in a timely manner."), [AR 456]; March 11, 2016 Evaluation by Dr. Kalava of Heywood Spine and Pain Center ("He reports anxiety and stress but reports no depression, no thoughts of suicide and no thoughts of violence;" "normal mood"), [AR 416-17]; January 12, 2017 Assessment of Dr. David Kent, Psychologist (can perform basic, unskilled work activity in the labor market, though "[a]ssuming the accuracy of claimant's self-report there is possible moderate disruption to pace, dealing with the public, and effective coping."), [AR 467, 474]; Clinical & Support Options January 25, 2017 Mental Status Exam: ("neat and appropriate" appearance; "cooperative and relaxed" behavior; memory, insight, judgment, intellectual functioning, "within normal limits;" no reported delusions, or suicidal or aggressive thoughts), [AR 1141].

I note also that the March 1, 2017 opinion contains no explanation for the prediction that because of his impairments Plaintiff would miss on average more than four days of work per month. The governing regulations provide that more weight will be accorded to the opinion of a treating source supported by an explanation. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) ("reports . . . contain[ing] little more than brief conclusory

12

statements or the mere checking of boxes denoting levels of residual functional capacity, and accordingly are entitled to relatively little weight."). When considering opinions in the form of residual functioning questionnaires, other sessions of this court have found that such forms "are entitled to little weight in the evaluation of disability." See Lacroix v. Barnhart, 352 F. Supp. 2d 100, 112 (D.Mass.2005) (quoting Anderson v. Sec'y of Health & Human Servs., 634 F. Supp. 967, 972 (D. Mass. 1984)).  In short, the ALJ's assignment of weight to P.A. Enos and D.O. Ryan's March 1, 2017 opinion was supported by substantial evidence and was not a result of the ALJ "substitute[ing] h[is] own opinions of an individual's health for uncontroverted medical evidence." Nieves v. Sec'y of Health & Human Servs., 775 F.2d 12, 14 (1st Cir. 1985).

    2. <u>The ALJ's Reliance on Dr. Channell's September 27, 2016 Opinion</u>

Plaintiff argues that the ALJ's RFC finding lacks substantial evidentiary support because it improperly depends on Dr. Channell's September 27, 2016 opinion. Specifically, Plaintiff contends that Dr. Channell, a non-treating source, did not review subsequent medical records when forming his expert opinion, and therefore the opinion is invalid. See Franceshi v. Colvin, 15-cv-11125 (IT), 2016 WL 5349477, at *15 (D. Mass. Aug. 30, 2016), report and recommendation adopted, 2016 WL 5346934 (D. Mass. Sept. 23, 2016).  As evidence that Dr. Channell's opinion is "outdated" and based on an incomplete record, Plaintiff specifically identified medical records from January 25, 2017 where Plaintiff reported paranoia and delusional thinking [AR 1145] and from April 21, 2017 where Plaintiff reported auditory hallucinations [AR 1066].

The undersigned agrees with Plaintiff that medical records post-dating Dr. Channell's opinion arguably reflect a change in the severity of Plaintiff's symptoms.  [AR

922 (diagnosing Plaintiff with schizoaffective disorder and obsessive-compulsive disorder), 1155-57 ("client reports he is Donnie in the session.")]. However, though Dr. Channell's opinion was made before these records existed, this "does not prevent the ALJ from assigning significant weight to [a state agency consultant's] assessment if the ALJ conducted an independent review of the evidence, which included treatment notes the consultant had not considered." Martinez-Lopez v. Colvin, 54 F. Supp. 3d 122, 137 (D. Mass. 2014) (quoting Carter v. Astrue, 886 F. Supp. 2d 1093, 1112 (N.D. Iowa 2012)); accord Genereux v. Berryhill, 15-13227 (GAO), 2017 WL 1202645, at *5 (D. Mass. Mar. 31, 2017) ("[T]here was no reversible error in relying, in part, on the [consultants'] opinions, which the ALJ found to be supported by other evidence in the record, even though those opinions were issued based on a partially incomplete evidence record").

Here, the ALJ permissibly relied on Dr. Channell's report in determining Plaintiff's RFC, even though Dr. Channell did not have the benefit of reviewing subsequent treatment records. The record before the ALJ included 2017 treatment records. These reflect Plaintiff's subjective complaints of hallucinations, paranoia and delusional thinking. It is apparent that the ALJ did not ignore these records; rather, the ALJ expressly found that the objective medical evidence in Plaintiff's records was inconsistent with Plaintiff's complaints. [AR 28 ("There is substantial disparity between the claimant's documentary complaints and the objective medical findings contained in the record. The undersigned finds that the claimant's complaints of chronic, severe pain, functional loss, and marked mental limitations are neither reasonably consistent with those medical findings, nor sufficiently credible as additive evidence to support a finding of disability.")] The ALJ was entitled to weigh this evidence and make credibility determinations.

In addition, though Plaintiff reported more severe symptoms a few months after Dr. Channell's report, the 2017 treatment records also include substantial evidence consistent with and supporting Dr. Channell's September 27, 2016 opinion. [AR 949 (January 25, 2017 record describing Plaintiff's appearance as neat and appropriate, his behavior as cooperative and relaxed, his memory, insight and judgment within normal limits; no reported delusions), 1026 (April 20, 2017 record describing Plaintiff's mood as normal, appearance as healthy, and having good judgment), 1016 (May 30, 2017 record describing the same), 1164 (September 14, 2017 reporting Plaintiff's statement that auditory hallucinations were not an issue)]. See Abubakar v. Astrue, 11-10456 (DJC), 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012) ("ALJ may rely on older evidence when the information in that evidence remains accurate").

Finally, it should be noted the ALJ gave partial weight to the August 30, 2017 opinion of P.A. Enos and D.O. Ryan which took into account Plaintiff's argued change in symptom severity. [AR 27 reporting a diagnosis of anxiety and schizoaffective disorder]. P.A. Enos and D.O. Ryan described Plaintiff as "appropriate" in all categories of current mental status. [AR 1074]. Accordingly, the record reflects that the ALJ's RFC finding was supported by substantial expert evidence. As such, contrary to Plaintiff's argument, the ALJ was not required to seek an additional psychological evaluation. See Ivins v. Colvin, No. 12-11460 (TSH), 2013 WL 6072890, at *10 (D. Mass. Nov. 15, 2013) ("The ALJ was not required to seek additional expert medical advice, as there was substantial medical evidence on the record") (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 5 (1st Cir. 1987)); see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("[T]he notion that there must always be some

super-evaluator, a single physician who gives the factfinder an overview of the entire case-is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter"). Accordingly, there was no error.

### 3. The ALJ's RFC Description

Lastly, Plaintiff argues that the phrase "less than the full range of light work," used in the ALJ's decision, references an unidentified limitation violating Social Security Ruling 96-8p. See SSR 96-8p ("RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do."). Here, there is no error or ambiguity in the ALJ's discussion of Plaintiff's RFC. The ALJ wrote Plaintiff can "perform less than the full range of light work … except he can occasionally balance, stoop, kneel, crouch, crawl or climb (ramps, stairs, ladders, ropes or scaffolds)." [AR 22]. This does not mean, as Plaintiff argues, that the ALJ is referring to an undefined exertional category with additional limitations. Rather, it means what it says; Plaintiff is able to perform less than the full range of light work with an explicit reference to Plaintiff's specific exertional limitations. This is consistent with the rest of the ALJ's decision and his question to the VE. [AR 55]. To the extent that the phrase could have been articulated more clearly, such error would be harmless. See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no more than an empty exercise").

**CONCLUSION**

The undersigned RECOMMENDS that Defendant's Motion to Affirm (Dkt. No. 16) be ALLOWED, and Plaintiff's Motion to Reverse (Dkt. No. 15) be DENIED.[2]

/s/ David H. Hennessy<br>
David H. Hennessy<br>
U.S. Magistrate Judge

---

[2] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).